UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**PRECISION COOLING TOWERS INC**         **CASE NO.  2:21-CV-03708**

**VERSUS**                                **JUDGE JAMES D. CAIN, JR.**

**INDORAMA VENTURES OLEFINS LLC**         **MAGISTRATE JUDGE KAY**

MEMORANDUM RULING

Before the Court are cross-motions for partial summary judgment (Docs. 19, 21) filed by Defendant Indorama Ventures Olefins, LLC ("Indorama") and Plaintiff Precision Cooling Towers, Inc. ("Precision"). In its motion, Indorama argues that Precision's Louisiana Revised Statues section 9:2781 open account claim and its claim for reliance damages that is related to a Louisiana state tax assessment should be dismissed. By contrast, Precision, the party with the ultimate burden of proof, argues in its motion that it is entitled to summary judgment on the principal amount of $131,778.20, plus attorney's fees and costs pursuant to Section 9:2781, and, in the alternative, summary judgment in its favor for breach of contract in the amount of $131,778.20, plus costs, interest, and bad faith attorney's fees. Both motions are ripe.

I. BACKGROUND

On August 3, 2016, Precision and Indorama entered into a contract whereby Precision agreed to perform work related to the replacement of certain cooling towers in Westlake, Louisiana (hereinafter, "Contract). Doc. 19-2; doc. 21-3. The Contract states a

Fixed Lump Sum Price in the amount of $3,773,462.00, subject to any change orders. Doc. 21-3, pp. 6, 38. Two change orders took place during the course of the project, bringing the total amount due to $3,850,838.00. *Id.* at 62–63. The Contract contained a "Payment Schedule," which allowed for payments to be spread out over the following eight different "Payment Milestones":

**Contract**

| Item No. | Payment Milestone | % of the Contract Price |
|---|---|---|
| 1 | Drawings Reviewed and Approved | 10% |
| 2 | Mobilization to site | 5% |
| 3 | Material delivered to site | 50% |
| 4 | Existing cooling tower cells, fans, gearboxes, etc. dismantled and removed (100 % complete) | 5% |
| 5 | Cooling tower structure installed | 5% |
|   | Cooling tower internals installed (fill & de's) | 5% |
| 6 | Mechanical equipment, piping, decks, ladder and stairway installed | 5% |
| 7 | Debris cleaned up from basin/sump and surrounding area-crew demobilized. | 5% |
| 8 | 72 hour Performance testing of cooling water system under 3rd party supervision (100% complete) | 10% |

Doc. 19-2, p. 18. Precision cooling performed all of its obligations pursuant to the terms of the Contract and submitted invoices for its work. Doc. 21-3, p. 1, ¶8. The final invoice was submitted to Indorama on February 27, 2020. *Id.* at 64. Indorama paid the first seven invoices but only made a partial payment on the last invoice in the amount of $209,518.00 in October 2020, resulting in underpayment to and an amount due to Precision in the amount of $131,778.20. *Id.* at 2, ¶9, 64–67; doc. 26-1. On June 4 and July 14, 2021, Precision submitted demand letters requesting payment of the $131,778.20. Doc. 21-3, pp. 65–67. These demand letters also state that the state of Louisiana was auditing Precision

after rejecting Indorama's manufacturing tax exemption certificate, which Indorama was contractually obligated to provide Precision. *Id.* at 65, 67.

October 19, 2021, after still not receiving payment for the outstanding amounts due, Plaintiff filed a Complaint in this Court, alleging claims against Indorama for damages under Section 9:2781, for breach of contract, and detrimental reliance. Doc 1.

The Court has previously denied Indorama's Rule 12(b)(6) motion as to Precision's claims under Section 9:2781. Doc. 13. Now in a Rule 56 motion, Indorama seeks dismissal of those same claims as well as Precision's claims for detrimental reliance based on a Notice of Assessment issued by the Louisiana Department of Revenue. Doc. 19-3, p. 4. Precision's motion, however, seeks partial summary judgment as to whether Indorama is indebted to it for the work that was timely and properly performed under the contract, which it advances under Section 9:2781 and, in the alternative, for breach of contract. Doc. 21-1, p.2.

## II.  **LEGAL STANDARD**

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). The Court is not required to search the record for material fact issues. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). However, resolving doubts in favor of the non-moving party is only triggered when the parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III. LAW & ANALYSIS

#### A. Indorama's motion as to Precision's detrimental reliance claim

Here, Indorama argues that Precision's claims for detrimental reliance should be dismissed because it has not provided any evidence that the tax assessment is final. Precision counters arguing that Indorama's argument is unsupported by legal authority. Additionally, Precision claims that although the state of Louisiana could reassess the December 3, 2020 assessment, there is an assessment issued by the Louisiana Department of Revenue instructing Precision to pay taxes that it otherwise would not have been subjected to had Indorama not misled it about its tax-exempt status. In opposition, Precision has produced the December 3, 2020 assessment and a May 28, 2021 letter from the Department of Revenue, which show that it is currently being assessed an amount due and payable of $193,413.23. Doc. 21-3, p. 68–69. Accordingly, Precision has met its burden with summary judgment evidence to create a triable issue of material fact that it has suffered damages in reliance on Indorama's representations of its tax-exempt status. Indorama's motion for partial summary judgment as to Precision's detrimental reliance claim will be denied.

#### B. Cross-motions on Precision's Section 9:2781 open account claim

Both parties move the Court on cross-motions for summary judgment; Precision claims Section 9:2781 applies whereas Indorama claims it does not. Consequently, "[w]hen parties file cross-motions for summary judgment, [the Court will consider] each party's

motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Miller v. Reliance Standard Life Ins. Co.*, 999 F.3d 280, 283 (5th Cir. 2021). Section 9:2781 provides:

> A. When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section. If the claimant and his attorney have expressly agreed that the debtor shall be liable for the claimant's attorney fees in a fixed or determinable amount, the claimant is entitled to that amount when judgment on the claim is rendered in favor of the claimant. Receipt of written demand by the person is not required.
>
> B. If the demand is forwarded to the person by first class mail to his last known address, a copy of the demand shall be introduced as evidence of written demand on the debtor.
>
> C. If the demand is made by citation and service of a petition, the person shall be entitled to pay the account without attorney fees by delivering payment to the claimant or the claimant's attorney within ten days after service of the petition in city courts and fifteen days after service of the petition in all other courts.
>
> D. For the purposes of this Section and Code of Civil Procedure Articles 1702 and 4916, "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. "Open account" shall include debts incurred for professional services, including but not limited to legal and medical services. For the purposes of this Section only, attorney fees shall be paid on open accounts owed to the state.
>
> E. As used in this Section the following terms shall have the following meanings:
>
> (1) "Person" means natural and juridical persons.

(2)     "Reasonable attorney fees" means attorney fees incurred before judgment and after judgment if the judgment creditor is required to enforce the judgment through a writ of fieri facias, writ of seizure and sale, judgment debtor examination, garnishment, or other post-judgment judicial process.

F.     If the judgment creditor incurs attorney fees after judgment on the principal demand associated with enforcement of the judgment, the judgment creditor may obtain judgment for those attorney fees and additional court costs by filing a rule to show cause along with an affidavit from counsel for the judgment creditor setting forth the attorney fees incurred. If the judgment debtor does not file with the court a memorandum in opposition at least eight days prior to the hearing on the rule, the court may award the attorney fees and court costs as prayed for without the necessity of an appearance in court by counsel for the judgment creditor. The rule to show cause shall include notice to the judgment debtor of the consequences under this Subsection of not timely filing a memorandum in opposition. The amount of any post-judgment award of attorney fees and costs shall be added to the total to be recovered on the principal demand through any existing writ or garnishment proceedings.

Here, Indorama argues that Precision's Section 9:2781 claim should be dismissed because there is no open account relationship between the parties. Doc. 19-3, p. 4. Rather, the parties entered into a contract with a "fixed lump sum price," doc. 21-3, p. 6, which was due upon completion of the work. Doc. 19-3, p. 4. Precision counters, and argues for partial summary judgment in its favor, that the work performed pursuant to the last invoice was completed yet not paid for by Indorama, which had the "practical effect . . . for [Precision] to 'float' several hundred thousand of dollars of expenses at any given time during the project . . . ," doc. 21-1, p. 5, for which amounted to "a generous line of credit," *id*.

Indorama's motion for partial summary judgment on the Section 9:2781 claim will be considered first, with the issue being whether the parties' agreement was a contract or

an open account. "Louisiana courts use four factors to determine whether a course of dealing qualifies as an open account: (1) whether there were other business transactions between the parties; (2) whether a line of credit was extended by one party to the other; (3) whether there are running or current dealings; and (4) whether there are expectations of other dealings." *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 174 (5th Cir. 2007) (citing *Paz v. BG Real Est. Servs., Inc.*, 921 So. 2d 186, 188 (La. Ct. App. 4th Cir. 2005)). Notably, the Fifth Circuit observes that, under Louisiana law, "[a]n open account . . . requires an ongoing relationship with an extension of credit to the debtor." *Id.* (collecting cases) (cleaned up).

Here, Indorama points to the Contract as evidence that no open account was established between the parties. Doc. 19-3, p. 4. The Contract, which is part of the summary judgment record, indicates that a sum certain of $3,773,462.00 was the price of performance subject to modification of subsequent work orders. Doc. 21-3, p. 6. Moreover, as each "Payment Milestone" was reached, a "% of the Contract Price" was to be remitted by Indorama to Precision for work performed. To this arrangement, Precision argues that as the contractor, it performed work specified in the Contract's Payment Milestone related to a percentage of the entire Contract Price. Then upon completion of that work, Precision argues that it invoiced Indorama for that percentage of the Contract Price, which resulted in Precision's expenses in performing its contractual obligations having the "practical effect of . . . a generous line of credit" in favor of Indorama. Doc. 21-2, p. 5. A similar

argument was rejected by the Fifth Circuit in *Cambridge Toxicology*; there, an expert services group and a litigation group entered into an agreement for an expert to present testimony at one trial. 495 F.3d at 174–75. The expert services group argued that this relationship resulted in an open contract because it invoiced the litigation group at regular intervals. *Id.* The Fifth Circuit concluded that the parties' one-time contractual agreement for performance in exchange for an agreed-upon sum certain was a contract, did not establish a line of credit, and thus was not an open account. *Id.* at 174. Under the second *Cambridge Toxicology* factor, "whether a line of credit was extended by one party to the other," the agreement between Indorama and Precision does not establish a line of credit, which weights in favor of a contract and not an open account. *See id.*

Also, under the fourth *Cambridge Toxicology* factor, "whether there are expectations of other dealings," the contract between Precision and Indorama, did not contemplate future or prospective business dealings beyond that which is specified in the contract. *See id.* at 175 (finding that the agreement only contemplated the preparation and presentation of expert testimony at one trial). Accordingly, the August 3, 2016 agreement between Precision and Indorama, represents what the document says it is, a "Contract Agreement," doc. 21-3, p. 4, not an open account.

In all, the Contract does not suggest that an open account was established between the parties. Furthermore, in its opposition and cross-motion, Precision has not produced any additional, or contradictory, summary judgment evidence that a line of credit was

established between it and Indorama. Ultimately, Indorama, as movant, has met is burden in its motion for partial summary judgment whereas Precision, as non-movant, has failed to meet its burden to come forth with summary judgment evidence that the August 3, 2016 Contract was not a contract but an open account pursuant to Section 9:2781. Accordingly, Indorama's motion for partial summary judgment will be granted as to the Section 9:2781 claim. As a result, the Court need not address Precision's partial motion for summary judgment on that same claim.

### C. Precision's motion as to its claim of breach of contract

Having determined that Precision's claim does not fall under Section 9:2781, Precision alternatively moves for partial summary judgment on its claim for breach of contract. Precision argues that Indorama failed to pay the final invoice in full after Precision cooling performed all its obligations pursuant to the terms of the Contract. In its opposition to Precision's motion for partial summary judgment on the issue of breach of contract, Indorama argues that Section 8.16 of the Contract provides, "The Contractor does not include for taxes on the material," doc. 21-3, p. 44, for which Indorama made the decision to deduct amounts from the final payment that corresponded to charges for reimbursement of sales taxes which were not due under the Contract. To support this argument, Indorama offers summary judgment evidence of Alfred Brandimarte III's affidavit that states Precision provided Indorama with documentation that showed charges for reimbursement of sales taxes. Doc. 26-1. In its reply, Precision does not dispute that it included charges

for reimbursement of sales taxes in the last invoice; rather, it argues that Mr. Brandimarte's affidavit is conclusory. In all, the Court is required to view the summary judgment evidence "in the light most favorable to [Indorama] and draw all reasonable inferences in that party's favor." *Cliftt*, 210 F.3d at 270. Which here, Indorama has "submitted evidence of contradictory facts," *Little*, 37 F.3d at 1075, that the unpaid amount of $131,778.20 accounted for tax charges that it was not obligated to pay under Section 8.16 of the Contract. Thus, Precision cannot, at this time, establish that it is entitled to partial summary judgment in its favor on its breach of contract claim.

Additionally, Precision's claims for bad faith attorney's fees cannot be resolved at this time because summary judgment in its favor for its breach of contract claim will be denied.

## IV. CONCLUSION

For the aforesaid reasons, Defendant Indorama's Motion for Partial Summary Judgment (Doc. 19) will be granted in part as to Plaintiff Precision's Louisiana Revised Statues section 9:2781 open account claim and denied in part as to all other requested relief. Additionally, Precision's Motion for Partial Summary Judgement (Doc. 21) will be denied.

**THUS DONE AND SIGNED** in Chambers on this 28th day of September 2023.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE